IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFREDO PEREZ-MARTINEZ,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 24-CV-5017** |
| | : | |
| **THE COUNTY OF** | : | |
| **UNION PENNA,** *et al.*, | : | |
| Defendants. | : | |

### MEMORANDUM

**PADOVA, J.**                                                                                            **JULY  17, 2025**

Plaintiff Alfredo Perez-Martinez[1] commenced this *pro se* action in September 2024 alleging that his civil rights were violated while he was housed at SCI Chester due to inadequate medical care.  Named as Defendants are:  "The County of Union Penna," Superintendent Gina Clark, Dr. Little, Mrs. Favoloro, SCI Chester, SCI Chester Medical Department, and Wellpath.  (Compl. at 1-2.)[2]

---

[1] The Complaint lists the Plaintiff's name as Alfredo Perez-Martinez and Alfredo Perez with an inmate number of QP-1055.  (*See, e.g.*, ECF No 1 at 2, 11; ECF No. 1-1 at 2.)  Subsequent filings by the Plaintiff were submitted under the name Alfredo Martinez Perez.  (*See* ECF Nos. 4 and 10.)  Additionally, a prior civil action alleging inadequate medical care to treat a low back condition was filed by this Plaintiff under the name Alfredo Martinez-Perez.  *See Martinez-Perez v. Clark*, Civ. A. No. 23-3972, 2024 WL 128211 (E.D. Pa. Jan. 11, 2024), *aff'd*, No. 24-1672, 2024 WL 4589228 (3d Cir. Oct. 28, 2024).  Accordingly, the Court understands the Plaintiff's name to be Alfredo Martinez Perez, Inmate #QP-1055.

[2] Perez's Complaint consists of the court's preprinted form complaint for use by prisoners alleging civil rights violations, as well as a handwritten supplement.  (*See* ECF Nos. 1 and 1-1.)  He also attached as an exhibit a letter from the Mexican consulate in support of his request for medical treatment.  (ECF No. 1-1 at 1.)  The Court will consider the entire submission as the Complaint.  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

By Order dated February 19, 2025, the Court took judicial notice of the filing of a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code by Wellpath Holdings, Inc. in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, *see In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.), and the Orders of the Bankruptcy Court enforcing the automatic stay under 11 U.S.C. § 362(a), because it appeared that Perez named a Defendant that was covered by the automatic stay. (ECF No. 8.) In accordance with the automatic stay and consistent with the Court's inherent power to manage its docket, *see R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 661 (3d Cir. 2022) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)), the Court stayed this matter. (*See* ECF No. 8.) In light of the subsequent Confirmation of the Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by Wellpath Holdings, Inc., *see In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx. May 1, 2025) (Bankr. Doc. No. 2596), the stay was lifted by Order dated May 21, 2025. (ECF No. 9.) Perez's application to proceed *in forma pauperis* was granted at that time.[3] (*Id.*)

Perez's Complaint is now ripe for statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). For the following reasons, the Court will dismiss the Complaint. Perez will be granted leave to file an amended complaint in the event he can cure the deficiencies noted by the Court.

---

[3] The May 21, 2025 Order also directed Perez to complete and return the Declaration form attached to the Order which, *inter alia*, queried Perez : (1) whether he had submitted a Proof of Claim to the Bankruptcy Court or to Wellpath's Claims Agent; and (2) whether Perez had submitted to Wellpath, its Claims Agent, or the Bankruptcy Court, an objection to or motion for relief from the Automatic Stay, an objection to the confirmation of Wellpath's Chapter 11 plan, and/or a ballot or other communication affirmatively expressing an intent to opt out of the Third-Party Release. (*See* ECF No. 9.) Perez returned a signed Declaration form that was entered on the docket on June 10, 2025, which provided no response as to Question (1) and an affirmative response as to Question (2). (*See* ECF No. 10.)

I.         **FACTUAL ALLEGATIONS**

Perez alleges that he received ineffective medical care at SCI Chester for the treatment of a painful, bleeding boil in his armpit, and that he was treated poorly by the medical and security staff. (*See* Compl. at ECF 1-1 at 2-4.) Perez first sought treatment for his condition in January 2024. (*Id.* at 3.) At the time of the filing of his Complaint in September 2024, he continued to seek treatment. (*Id.* at 4.) He claims that Defendant Dr. Little and "Dr. Nicholas," who is not named as a Defendant, told him that "insurance does not cover it" and refused to render medical care. (*Id.* at 2.) When Perez complained about his boil to Sergeant Samuel, who also is not named as a Defendant, Sergeant Samuel told Perez that he "did not give a sh--" and that Perez should go back to his country, calling Perez an "f—ing Mexican." (*Id.*) Perez notes that he filed grievances regarding his poor treatment by security staff and medical staff. (*Id.*)

Perez included in his Complaint a chronology of the events underlying his claims. (*See id.* at 3-4.) He alleges he discovered an abscess in his armpit on January 2, 2024, and that he put in a sick call request on January 14 due to excessive bleeding of the abscess. (*Id.* at 3.) On January 16, Dr. Little gave Perez a "'wound care' pass" for one week, as well as medication, which Perez asserts was not helpful. (*Id.*) On February 10, Perez submitted another sick call request and was seen and treated by Dr. Little because the abscess continued to bleed. (*Id.*) On May 14, Perez submitted another sick call request because the abscess continued to bleed and "he refused treatment." (*Id.*) On May 31, "Doctor" told Perez that insurance would not pay for surgery to treat the abscess. (*Id.*) On June 14, a representative of the Mexican consulate met with Perez regarding his medical issue. (*See id.* at 1, 3.) On June 20, Dr. Little "told [Perez] he would start treating the abscess." (*Id.* at 3.) Perez saw Dr. Little again on June 28 and was given medication, although Perez contends that it was ineffective. (*Id.*) Perez submitted a sick call

3

request on July 9 and was taken to the medical department on July 10. (*Id.*) He alleges that when he arrived, "the doctor" refused to see him and when Perez informed the doctor that the medication was ineffective, he was told to find a new doctor. (*Id.*)

On August 5, Perez was seen by "Dr. Nicholson," who told him that he was to be sent to a specialist the following day. (*Id.*) On August 6, Sergeant Samuel allegedly told Perez to "go back to your country and take care of your sh-- over there." (*Id.*) On September 3, Perez put in another sick call request and was taken to the medical department on September 5, when the "Doctor" told him that insurance "won't pay for it." (*Id.* at 4.) Perez again saw Dr. Little on September 9. (*Id.*) He contends that Dr. Little did not want to help him and kicked Perez out of his office. (*Id.*) At the time of the filing of the Complaint, Perez alleged that he continued to experience pain and bleeding from the abscess. (*Id.*) As relief, Perez requests monetary compensation and assistance in obtaining medical attention. (*Id.* at 2, 4.)

## II.     STANDARD OF REVIEW

Because Perez has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). *See also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Perez's favor, and ask only whether

the Complaint "contains facts sufficient to state a plausible . . . claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Perez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant 'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.   DISCUSSION

Perez asserts constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Perez's claims are best construed as alleging that he was denied medical care in violation of his Eighth Amendment rights. However, as explained below, claims are not plausible as pled.

### A.   Claims Against "The County of Union, Penna"

The Court will dismiss "The County of Union, Penna" as a Defendant in this matter. It appears that this Defendant was listed on page two of the Complaint in error and is a reference to Perez's prior civil action. *See Martinez-Perez v. Clark, et al.*, Civ. A. No. 23-3972 (ECF No. 1 at 4) (describing Perez's lower back injury that was the subject of that case and noting that he

had brought it to the attention of the medical department of every institution in which he was held, including Union County Prison). Because there is not any plausible connection between Union County, Pennsylvania, and the events of this lawsuit, this Defendant will be dismissed with prejudice for failure to state a claim.

      **B.**      **Claims Against SCI Chester and SCI Chester Medical Department**

States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). As a prison within Pennsylvania's Department of Corrections, SCI Chester is entitled to Eleventh Amendment immunity and is also not a "person" for purposes of § 1983. *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" (citation omitted)); *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983." (citation omitted)). Similarly, the United States Court of Appeals for the Third Circuit has made clear that a prison medical department is not a "person" for purposes of § 1983 liability. *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845-46 (3d Cir. 2011) (*per curiam*) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)). The Court will therefore dismiss the claims against SCI Chester and SCI Chester Medical Department with prejudice.

C.     Claims Against Dr. Little

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Additionally, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Assuming *arguendo* for purposes of this Memorandum that Perez has plausibly alleged a serious medical need, Perez's Eighth Amendment deliberate indifference claim against Defendant Dr. Little also fails as pled. First, "[n]ot every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023). "Where a prisoner is receiving some amount of

7

medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id.* (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)) (affirming dismissal of deliberate indifference claims on screening). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Palakovic v. Wetzel*, 854 F.3d 209, 227-28 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) (additional citations omitted); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted). "Deliberate indifference requires obduracy and wantonness – not merely professional negligence." *Johnson v. Doe*, No. 23-3230, 2024 WL 4432083, at *3 (3d Cir. Oct. 7, 2024) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.")) (additional citations omitted).

Perez's description of Dr. Little's actions between January 14, 2024 and September 9, 2024, reflect that Dr. Little provided treatment for Perez's abscess, although Perez contends that the treatment was ineffective. (*See* ECF No. 1-1.) For example, Perez states that Dr. Little gave him a wound care pass and medication on January 16; Dr. Little treated Perez on February 10; on June 20, Dr. Little told Perez that he would start treating him again; and he gave Perez medication on June 28. (*Id.* at 3-4.) This course of treatment contradicts any suggestion of deliberate indifference. *See, e.g., Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." (citation omitted)). Additionally, Perez does not specifically identify the medical provider or providers who allegedly refused treatment on May

8

14, who advised him on May 31 that insurance would not cover surgery to treat the abscess, who refused to treat him on June 10, and/or who informed Perez on September 5 that insurance "won't pay for it." (*See* ECF No. 1-1 at 3-4.) Therefore, it is not clear from the Complaint that these actions or inactions could even be attributed to Dr. Little. While Perez also alleges that Dr. Little "doesn't want to help" him and kicked Perez out of his office on September 9 (*see id.* at 4), it is unclear if this refusal was based on the aforementioned insurance coverage issue, deliberate indifference, or another reason. *See, e.g., Hughes v. Pillai*, No. 07-55J, 2008 WL 723510, at *8 (W.D. Pa. Mar. 17, 2008) ("Consideration of the cost in trying alternative treatments simply does not per se deprive a prisoner of the minimal civilized measure of life's necessities. That cost is a factor in the provision of treatment outside the prison walls supports this conclusion." (citation omitted)). Accordingly, Perez's Complaint as pled does not allege a plausible deliberate indifference claim against Dr. Little. *Iqbal*, 556 U.S. at 678.

### D.     Claims Against Superintendent Clark and Mrs. Favoloro

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207). Perez includes Superintendent Gina Clark and Mrs. Favoloro as Defendants but presents no allegations against either individual. (*See* Compl. at 1-11; ECF No. 1-1 at 2-4.) To the extent Perez named

9

Superintendent Clark as a Defendant because she is responsible for managing SCI Chester, this fact alone is an insufficient basis upon which to bring a claim against her. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (stating that generalized allegations that a supervisory defendant is "in charge of" or responsible for an office or agency are insufficient to allege personal involvement in an underlying constitutional violation). Further, while it is unclear what role Defendant Favoloro holds within the prison, it is worth observing that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff." (citation omitted)). Accordingly, any claims against Defendants Clark and Favoloro are not plausible because Perez has failed to allege how either Defendant was personally involved in the alleged constitutional violation grounded on medical deliberate indifference.

        E.      **Claims Against Wellpath**

To plead a § 1983 claim against a medical contractor who provides medical services at a prison such as Wellpath, a plaintiff must satisfy the standards for alleging municipal liability, which requires him to allege that the contractor's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor); *Callahan v. Clark*, Civ. A. No. 20-305, 2023 WL 5596269, at *15 (W.D. Pa. Aug. 14, 2023) ("Private corporations that contract with the state to provide services typically provided by the state are also subject to potential liability

based on the principles established by *Monell*, but like municipal entities, private corporations are not liable under § 1983 based on a theory of respondeat superior." (citing *Natale*, 318 F.3d at 583-84)), *report and recommendation adopted*, No. 20-305, 2023 WL 5580998 (W.D. Pa. Aug. 29, 2023). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff may also state a basis for claim in this context by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Perez lists Wellpath as a Defendant in the caption of the Complaint but presents no allegations against it. He may not base § 1983 claims against Wellpath solely on the fact that it employs individuals who allegedly failed to treat him. Nothing in Perez's Complaint suggests that the conduct of which he complains was caused by a policy or custom, or deliberate indifference otherwise attributable to Wellpath. Accordingly, Perez has failed to state a plausible deliberate indifference claim against Wellpath, and the claim against Wellpath will be dismissed.

While the claim against Wellpath will be dismissed without prejudice, Perez will not be given leave to amend the claim in this court. This court is not the proper forum for Perez to

pursue his claims against Wellpath, which was discharged from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for claims that arose prior to November 11, 2024.  *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.) (Bankr. Doc. Nos. 2596, 2679, 2680) ); *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."). Although Perez cannot proceed against Wellpath in this Court, the dismissal of his claims does not affect his ability to proceed in the Bankruptcy Court in accordance with the terms of the *Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* (Bankr. Doc. No. 2596) and its supplement (Bankr. Doc. No. 2597), as well as the procedures of the Bankruptcy Court.

**IV.    CONCLUSION**

For the foregoing reasons, Perez's claims against "The County of Union, Penna," SCI Chester, and SCI Chester Medical Department will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  He will not be given leave to amend these claims because the Court concludes that amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

The claim against Wellpath will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Leave to amend this claim will not be given.  To the extent Perez seeks to pursue a claim against Wellpath, he must do so in accordance with the

procedures of the United States Bankruptcy Court for the Southern District of Texas, Houston Division. *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.).

All other claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Perez will be given an opportunity to correct the defects in his claims by filing an amended complaint. Any amended complaint must clearly describe the factual basis for his claims and how the defendant was personally involved in the alleged denial of Perez's rights. Perez may not reassert a claim against Wellpath or a claim that has already been dismissed with prejudice.

An appropriate Order follows, which provides further instruction about amendment.

**BY THE COURT:**

/s/ John R. Padova, J.

**JOHN R. PADOVA, J.**